## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO. _____

**JAMES D. SALLAH, not individually, but
solely in his capacity as Court-Appointed
Receiver for JCS Enterprises Inc., d/b/a
JCS Enterprises Services Inc., T.B.T.I. Inc.,
My Gee Bo, Inc., JOLA Enterprise, Inc.,
and PSCS Holdings, LLC,**

        **Plaintiff,**

**vs.**

**JON DREW FLANSBURG, an individual,
MARIA FLANSBURG, an individual,
JON FLANSBURG, an individual,
MICHAEL DICKEY, an individual,
D&L INVESTMENT GROUP, LLC, a
Florida limited liability company,
DICKEY ENTERPRISES, LLC, a Florida
limited liability company,
BRIAN DICKEY, an individual,
JAMES KELLY, an individual,
RYAN LAWRENCE, an individual,
CLARENCE MARTIN, an individual,
ERNST RAFFAELE, an individual,
JUDITH RAFFAELE, an individual,
JORGE BUSTAMANTE, JR., an
individual, and
ANDREW WRIGHT, an individual,**

        **Defendants.**

_____/

### **COMPLAINT**

Plaintiff James D. Sallah, Esq. ("Plaintiff," "Mr. Sallah," or the "Receiver"), not

individually, but solely in his capacity as Court-Appointed Receiver for JCS Enterprises Inc., d/b/a

JCS Enterprises Services Inc. ("JCS"), T.B.T.I. Inc. ("TBTI"), My Gee Bo, Inc. ("Gee Bo"), JOLA

Enterprise Inc. ("JOLA"), and PSCS Holdings, LLC ("PSCS") (collectively, the "Receivership

Entities" or the "Receivership Estate"), by and through undersigned counsel, hereby sues Jon Drew Flansburg, an individual ("Jon Drew Flansburg"); Maria Flansburg, an individual ("Maria Flansburg"); Jon Flansburg, an individual ("Jon Flansburg"); Michael Dickey, an individual ("Michael Dickey"); D & L Investment Group, LLC , a Florida limited liability company ("D&L"); Dickey Enterprises, LLC, a Florida limited liability company ("DELLC"); Brian Dickey, an individual ("Brian Dickey"); James Kelly, an individual ("James Kelly"); Clarence Martin, an individual ("Clarence Martin"); Ernst Raffaele, an individual ("Ernst Raffaele"); Judith Raffaele, an individual ("Judith Raffaele"); Jorge Bustamante, Jr., an individual ("Jorge Bustamante, Jr."); and Andrew Wright, an individual ("Andrew Wright") (collectively, "Defendants") and alleges as follows:

## I.   PARTIES AND OTHER RELEVANT PERSONS

### A.   THE RECEIVER, JAMES D. SALLAH, ESQ.

1.      On April 7, 2014, the United States Securities and Exchange Commission (the "SEC") commenced an action against JCS, TBTI, and two individuals, Joseph Signore ("Joseph Signore") and Paul L. Schumack, II ("Schumack") in the case styled, *Securities and Exchange Commission v. JCS Enterprises, Inc., d/b/a JCS Enterprises Services, Inc., T.B.T.I. Inc., Joseph Signore, and Paul L. Schumack, II.*, Case No. 14-CV-80468-MIDDLEBROOKS/BRANNON (S.D. Fla. Apr. 7, 2014) (the "SEC Case").

2.      On April 7, 2014, the Honorable Donald M. Middlebrooks, United States District Court Judge, issued an Amended Receivership Order and appointed Mr. Sallah as Receiver over JCS and TBTI.

3.      On April 14, 2014, the Court expanded the Receivership over Gee Bo.  On December 12, 2014, the Court expanded the Receivership over JOLA and PSCS.

4.     On December 15, 2014, the Court reappointed Mr. Sallah as Receiver for the Receivership Entities (the "Reappointment Order").   A copy of the Reappointment Order is attached hereto as **Exhibit A**.

5.     In the Reappointment Order, the Court has directed the Receiver to:

> Investigate the manner in which the affairs of the Receivership Entities were conducted and institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Entities and their investors and other creditors as the Receiver deems necessary against those individuals, corporations, partnerships, associations and/or unincorporated organizations, which the Receiver may claim have wrongfully, illegally or otherwise improperly misappropriated or transferred monies or other proceeds directly or indirectly traceable from investors in the Receivership Entities, including their officers, directors, employees, affiliates, subsidiaries, or any persons acting in concert or participation with them, or against any transfers of money or other proceeds directly or indirectly traceable from investors in the Receivership Entities; provided such actions may include, but not be limited to, seeking imposition of constructive trusts, disgorgement of profits, recovery and/or avoidance of fraudulent transfers under Florida Statute §726.101, *et seq*. or otherwise, rescission and restitution, the collection of debts, and such orders from this Court as may be necessary to enforce this Order.

6.     In accordance with 28 U.S.C. §754, the Receiver filed a copy of the Complaint in the SEC Case and a copy of the Amended Receivership Order or the Reappointment Order in the United States District Courts for the Districts where each Defendant resides within ten (10) days of the issuance of the respective orders, as applicable.

7.     In accordance with the Amended Receivership Order and the Reappointment Order, Mr. Sallah has brought this action, not in his individual capacity, but solely in his capacity as Court-Appointed Receiver, to recover money transferred to Defendants from the Receivership Entities in excess of Defendant's principal investment.

**B. THE RECEIVERSHIP ENTITIES**

8.      JCS is a Delaware corporation, incorporated in 2010, with its principal place of business in Jupiter, Florida.  Joseph Signore was the Chairman and President of JCS, and Laura Signore ("Laura Signore") was Vice Chairperson and Vice President.

9.      TBTI is a Florida corporation, incorporated in 2001, with its former principal place of business in Coconut Creek, Florida.  Schumack was Vice President of TBTI, and Christine Schumack ("Christine Schumack") was its President.

10.     Gee Bo is a Florida corporation, incorporated in 2013, with its former principal place of business in Jupiter, Florida.  Defendant Joseph Signore was Gee Bo's President and Defendant Laura Signore was its Treasurer and Secretary.

11.     JOLA is a Florida corporation, incorporated in 2013, with its former principal place of business in Jupiter, Florida.

12.     PSCS is a limited liability company organized under the laws of the State of Florida in 2013 with its former principal place of business in Highland Beach, Florida.

**C. DEFENDANTS**

13.     Upon information and belief, Defendant Jon Drew Flansburg resides in San Antonio, Texas.

14.     Upon information and belief, Defendant Maria Flansburg resides in San Antonio, Texas.

15.     Upon information and belief, Jon Drew and Maria Flansburg are married and invested in VCM contracts together.

16.     Upon information and belief, Defendant Jon Flansburg resides in Frisco, Texas.

17.     Upon information and belief, Defendant Michael Dickey resides in Lutz, Florida.

18.     Upon information and belief, Defendant D&L is a Florida limited liability company with its principal place of business in Lutz, Florida.  Defendant Michael Dickey is D&L's president.

19.     Upon information and belief, Defendant DELLC is a Florida limited liability company with its principal place of business in Lutz, Florida.  Defendant Michael Dickey is DELLC's president.

20.     Upon information and belief, Defendant Brian Dickey resides in Lutz, Florida.

21.     Upon information and belief, Defendant James Kelly resides in Bayville, New York.

22.     Upon information and belief, Defendant Clarence Martin resides in Phenix City, Alabama.

23.     Upon information and belief, Defendant Ernst Raffaele resides in Bridgeport, Connecticut.

24.     Upon information and belief, Defendant Judith Raffaele resides in Bridgeport, Connecticut.

25.     Upon information and belief, Ernst and Judith Raffaele are married and invested in VCM contracts together.

26.     Upon information and belief, Defendant Jorge Bustamante, Jr., resides in El Paso, Texas.

27.     Upon information and belief, Defendant Andrew Wright resides in El Paso, Texas.

## II.  JURISDICTION AND VENUE

28.     The Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 78aa, 28 U.S.C. § 754, and principles of ancillary or supplemental jurisdiction under 28 U.S.C.

§ 1367. This Complaint is brought to accomplish the objectives of the Receivership Order, and thus this matter is ancillary to the Court's exclusive jurisdiction over the Receivership Estate.

29. The Court has personal jurisdiction over Defendants pursuant to 28 U.S.C. §§ 754 and 1692.

30. Venue in this District and Division is proper under 28 U.S.C. § 754 as this action is related to the SEC Case pending in this District, and the Receiver was appointed in this District.

### III. FACTS RELEVANT TO THE RECEIVER'S CLAIMS

#### A. THE JCS-TBTI PONZI SCHEME

31. JCS manufactured and marketed virtual concierge machines ("VCMs"), which are free-standing or wall-mounted, ATM-like machines that were promised to be placed at various locations to enable businesses to advertise their products and services via touch screen and printable tickets or coupons which were dispensed from the VCMs.

32. In 2011, JCS and TBTI entered into an agreement whereby TBTI would be the sales agent for JCS and its Virtual Concierge program.

33. From at least as early as 2011 through April 7, 2014, Joseph Signore operated JCS.

34. From at least as early as 2011 through April 7, 2014, Schumack operated TBTI.

35. Joseph Signore and Schumack offered and sold investments in JCS's VCMs, which would purportedly pay income to investors from advertising revenues generated by the VCMs.

36. JCS and TBTI, combined, raised approximately $80.8 million from at least 1,800 investors by selling contracts for more than 22,500 VCMs.

37. These sales to investors were documented through contracts with JCS and TBTI, and those contracts represented that advertising revenue would provide investors with a return of

$300 per month for thirty-six (36) to forty-eight (48) months, or a return of at least $10,800 over a 36 month period.

38.     However, advertising revenues were insufficient to pay the promised returns to investors.

39.     During the relevant time period from 2011 through April 7, 2014, JCS and TBTI, combined, earned a total of approximately $21,000 in advertising revenue from these machines.

40.     To put things into perspective, the advertising revenue actually generated by VCMs would not even have supported the obligations for **two** (2) VCMs that were sold under the shorter, 36-month contracts, let alone more than 22,000 VCMs.  Moreover, based on a conservative calculation assuming that the payment stream would be limited to 36 months, JCS and TBTI would have been obligated to pay more than $243.4 million to investors during the duration of these investment contracts, or $6.75 million per month.

41.     Besides approximately $21,000 in advertising revenue, JCS and TBTI generated no other meaningful source of revenue or cash inflows from which to pay investors.

42.     In order to maintain the fiction that the investment was valid and make these payments to investors, Joseph Signore and Paul Schumack caused JCS and TBTI, respectively, to use new investor funds to make so-called "returns" to earlier investors in the total amount of $49.7 million.

43.     While Joseph Signore operated JCS and Paul Schumack operated TBTI, they caused JCS and TBTI to transfer monies:  (a) as returns and/or redemptions to earlier investors; (2) for commissions paid to agents who perpetuated their scheme; and (3) for their own use, including diverting funds to themselves or other companies they controlled.

44.     These transfers were made almost exclusively from: (1) principal money from new investors; (2) existing investors' principal investment money; and/or (3) additional principal investment money from existing investors.

45.     All transfers that Joseph Signore wrongfully caused JCS to make as returns and/or redemptions to investors and as commissions paid to agents were diverted and misappropriated by Joseph Signore in furtherance of his scheme.

46.     All transfers that Paul Schumack wrongfully cause TBTI to make as returns and/or redemptions to investors and as commissions paid to agents were diverted and misappropriated by Paul Schumack in furtherance of his scheme.

47.     As a result, Joseph Signore operated JCS as a Ponzi scheme.

48.     As a result, Paul Schumack operated TBTI as a Ponzi scheme.

49.     Indeed, regarding this Ponzi scheme, on December 7, 2015, a jury sitting in the United States District Court for the Southern District of Florida found Joseph Signore and Paul Schumack guilty of multiple crimes, including conspiracy to commit wire or mail fraud; mail fraud; wire fraud; conspiracy to commit money laundering; promotional money laundering; concealment money laundering; and transactional money laundering. *See United States of America v. Joseph Signore, Paul Lewis Schumack II, and Laura Grande-Signore*, Jury Verdicts (DE 677, 678), Case No. 9:14-cr-80081-HURLEY (S.D. Fla. Dec. 7, 2015).

**B.   SCHUMACK CAUSED TBTI TO TRANSFER FUNDS FRAUDULENTLY TO DEFENDANTS JON DREW AND MARIA FLANSBURG, JON FLANSBURG, MICHAEL DICKEY, D&L, DELLC, JAMES KELLY, RYAN LAWRENCE, CLARENCE MARTIN, ERNST AND JUDITH RAFFAELE, JORGE BUSTAMANTE, JR., AND ANDREW WRIGHT FOR THEIR PURPORTED INVESTMENTS**

50.     Defendants Jon Drew and Maria Flansburg, Jon Flansburg, Michael Dickey, D&L, DELLC, James Kelley, Ryan Lawrence, Clarence Martin, Ernst and Judith Raffaele, Jorge

Bustamante, Jr., and Wright invested in VCM contracts in the amounts indicated in the table, below in Paragraph 53, net of any chargebacks they may have received.

51.     Schumack caused TBTI to transfer purported income and/or purported return of principal payments ("Income Payments") to Defendants Jon Drew and Maria Flansburg, Jon Flansburg, Michael Dickey, D&L, DELLC, James Kelley, Ryan Lawrence, Clarence Martin, Ernst and Judith Raffaele, Jorge Bustamante, Jr., and Wright in the amounts indicated in the table, below:

| Exhibit | Defendant | Net Amount Invested | Income Payments |
|---------|-----------|---------------------|-----------------|
| B | Jon Drew and Maria Flansburg | $1,000.00 | $ 72,300.00 |
| C | Michael Dickey, D&L, and DELLC | 132,500.00 | 198,875.00 |
| D | James Kelly | 241,200.00 | 291,400.00 |
| E | Ryan Lawrence | 165,000.00 | 229,500.00 |
| F | Clarence Martin | 210,000.00 | 267,600.00 |
| G | Ernst and Judith Raffaele | 38,100.00 | 68,825.00 |
| H | Jorge Bustamante, Jr. | 33,250.00 | 72,000.00 |
| I | Jon Flansburg | 111,000.00 | 215,700.00 |
| J | Andrew Wright | 525,875.00 | 848,675.00 |

These transfers are itemized in **Exhibits B to J**, which detail the date and amount of each such transfer from and to each, respective Defendant.

52.     Paul Schumack caused TBTI to make these Income Payments with actual intent to hinder, delay, or defraud TBTI.

53.     TBTI did not receive a reasonably equivalent value in exchange for any Income Payments that were made to Defendants Jon Drew and Maria Flansburg, Jon Flansburg, Michael

Dickey, D&L, DELLC, James Kelley, Ryan Lawrence, Clarence Martin, Ernst and Judith Raffaele, Jorge Bustamante, Jr., and Andrew Wright in excess of the amounts they invested ("Excess Income Payments").

54.    At the time of these transfers, Paul Schumack was engaged, or was about to engage, in a business or a transaction for which his remaining assets were unreasonably small in relation to the business or transaction.

55.    At the time of these transfers, Paul Schumack intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

56.    TBTI was harmed by this unauthorized course of conduct, which was effectuated by Paul Schumack, individually, or through his control of TBTI.

57.    This conduct dissipated TBTI's assets.

58.    Accordingly, Paul Schumack is a debtor under Fla. Stat. §726.102(6), and the Receiver, on behalf of the Receivership Entities, is a creditor of Paul Schumack.

## C.  SIGNORE CAUSED JCS TO TRANSFER FUNDS FRAUDULENTLY TO BRIAN DICKEY

59.    Defendant Brian Dickey invested in VCM contracts in the amounts indicated in the table, below.

60.    Signore caused JCS to transfer Income Payments to Defendant Brian Dickey in the amounts indicated in the table, below:

| Exhibit | Defendant | Net Amount Invested | Income Payments |
|:---:|:---|:---:|:---:|
| **K** | Brian Dickey | $21,000.00 | $43,500.00 |

These transfers are itemized in **Exhibit K**, which details the date and amount of each such transfer from and to Defendant Brian Dickey.

61.     Joseph Signore caused JCS to make these Income Payments with actual intent to hinder, delay, or defraud JCS.

62.     JCS did not receive a reasonably equivalent value in exchange for any Income Payments that were made to Defendant Brian Dickey in excess of the amounts they invested (the "Excess Income Payments").

63.     At the time of these transfers, Joseph Signore was engaged, or was about to engage, in a business or a transaction for which his remaining assets were unreasonably small in relation to the business or transaction.

64.     At the time of these transfers, Joseph Signore intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

65.     JCS was harmed by this unauthorized course of conduct, which was effectuated by Joseph Signore, individually, or through his control of JCS.

66.     This conduct dissipated JCS's assets.

67.     Accordingly, Joseph Signore is a debtor under Fla. Stat. §726.102(6), and the Receiver, on behalf of the Receivership Entities, is a creditor of Joseph Signore.

**D.  SCHUMACK CAUSED TBTI TO PAY ILLEGAL COMMISSIONS TO JON FLANSBURG AND ANDREW WRIGHT**

68.     In addition to the transfers of excess income payments discussed above, Schumack caused TBTI to make commission payments to Defendants Andrew Wright and Jon Flansburg in exchange for Andrew Wright's and Jon Flansburg's sales of VCM contracts to investors.

69.     As detailed in **Exhibit L**, attached hereto and incorporated herein, based on the records reviewed by the Receiver as of the filing of this Complaint, between 2011 and April 7, 2014, Schumack caused TBTI to pay Defendant Jon Flansburg $6,950 in in Commission

Payments.  These payments are itemized in Exhibit L which details the date and amount of each such Commission Payment.

70.     As detailed in **Exhibit M**, attached hereto and incorporated herein, based on the records reviewed by the Receiver as of the filing of this Complaint, between 2011 and April 7, 2014, Schumack caused TBTI to pay Defendant Andrew Wright $228,850.00 in Commission Payments.  These payments are itemized in Exhibit M which details the date and amount of each such Commission Payment.

71.     Schumack caused TBTI to make these Commission Payments with actual intent to hinder, delay, or defraud TBTI.

72.     TBTI did not receive a reasonably equivalent value in exchange for these transfers of purported commission payments to Defendants Jon Flansburg and Andrew Wright.

73.     At the time of these transfers, Paul Schumack was engaged, or was about to engage, in a business or a transaction for which his remaining assets were unreasonably small in relation to the business or transaction.

74.     At the time of these transfers, Paul Schumack intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

75.     TBTI was harmed by this unauthorized course of conduct, which was effectuated by Paul Schumack, individually, or through his control of TBTI.

76.     This conduct dissipated TBTI's assets.

77.     Accordingly, Paul Schumack is a debtor under Fla. Stat. §726.102(6), and the Receiver, on behalf of the Receivership Entities, is a creditor of Paul Schumack for the recovery

12

of wrongful transfers he made to third parties, including the Commission Payments made to

Defendants Andrew Wright and Jon Flansburg for the sale of VCM contracts.

**E.  DEFENDANTS' RETENTION OF THE BENEFITS CONFERRED BY
     THE RECEIVERSHIP ESTATE**

78.     TBTI and JCS conferred benefits on Defendants, respectively, including the

transfer to Defendants of funds in excess of the amounts they respectively contributed to TBTI and

JCS, respectively, as reflected in Exhibits B to M.

79.     Defendants accepted these benefits willfully and voluntarily.

80.     Defendants continue to retain the benefits conferred on them by JCS or TBTI, as

applicable.

81.     To allow the Defendants to retain these funds would be inequitable and unjust,

including to investors in the Receivership Entities.

**CONDITIONS PRECEDENT**

82.     All conditions precedent for asserting the claims herein have been satisfied,

executed or waived.

**COUNT I
SECTION 726.105(1)(a), FLA. STAT.:
UNIFORM FRAUDULENT TRANSFER ACT
(AGAINST DEFENDANTS JON DREW AND MARIA FLANSBURG, MICHAEL DICKEY, D&L
INVESTMENT GROUP, LLC, DICKEY ENTERPRISES, LLC, JAMES KELLY, RYAN LAWRENCE,
CLARENCE MARTIN, ERNST AND JUDITH RAFFAELE, AND JORGE BUSTAMANTE, JR. FOR THEIR
EXCESS INCOME PAYMENTS)**

83.     The Receiver re-alleges each and every allegation contained in Paragraphs 1

through 84.

84.     This claim is asserted in the alternative to Counts II, III, and X.

85.     Paul Schumack, a debtor, caused TBTI to transfer purported income and/or

purported return of principal payments to Defendants Jon Drew and Maria Flansburg, Jon

Flansburg, Michael Dickey, D&L, DELLC, James Kelley, Ryan Lawrence, Clarence Martin, Ernst and Judith Raffaele, and Jorge Bustamante, Jr., directly or indirectly, with actual intent to hinder, delay or defraud the Receiver, a creditor.

86. The Receiver is entitled to avoid the fraudulent transfers of the Excess Income Payments from TBTI to Defendants Jon Drew and Maria Flansburg, Michael Dickey, D&L, DELLC, James Kelley, Ryan Lawrence, Clarence Martin, Ernst and Judith Raffaele, and Jorge Bustamante, Jr., as set forth in Exhibits B to H, pursuant to Section 726.105(1)(a), FLA. STAT.

WHEREFORE, the Receiver asks this Court to enter judgment against Defendants Jon Drew and Maria Flansburg, Michael Dickey, D&L, DELLC, James Kelley, Ryan Lawrence, Clarence Martin, Ernst and Judith Raffaele, and Jorge Bustamante, Jr., for the Excess Income Payments, as set forth in Exhibits B to H, together with interest and costs, and for such other and further relief as the Court may deem just and proper.

**COUNT II**
**SECTION 726.105(1)(b), FLA. STAT.:**
**UNIFORM FRAUDULENT TRANSFER ACT**
**(AGAINST DEFENDANTS JON DREW AND MARIA FLANSBURG, MICHAEL DICKEY, D&L INVESTMENT GROUP, LLC, DICKEY ENTERPRISES, LLC, JAMES KELLY, RYAN LAWRENCE, CLARENCE MARTIN, ERNST AND JUDITH RAFFAELE, AND JORGE BUSTAMANTE, JR., FOR THEIR EXCESS INCOME PAYMENTS)**

87. The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 84.

88. This claim is asserted in the alternative to Counts I, III, and X.

89. TBTI did not receive a reasonably equivalent value in exchange for the transfer of the Excess Income Payments made to Defendants Jon Drew and Maria Flansburg, Michael Dickey, D&L, DELLC, James Kelley, Ryan Lawrence, Clarence Martin, Ernst and Judith Raffaele, and Jorge Bustamante, Jr.

14

90.     When these transfers were made, Paul Schumack was engaged in a business or transaction for which the remaining assets were unreasonably small in relation to the business or transaction.

91.     When these transfers were made, Paul Schumack intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as the debt became due.

92.     The Receiver is entitled to avoid the transfers of Excess Income Payments made from TBTI to Defendants Jon Drew and Maria Flansburg, Michael Dickey, D&L, DELLC, James Kelley, Ryan Lawrence, Clarence Martin, Ernst and Judith Raffaele, and Jorge Bustamante, Jr., as set forth in Exhibits B to H, pursuant to Section 726.105(1)(b), FLA. STAT.

WHEREFORE, the Receiver asks this Court to enter judgment against Defendants Jon Drew and Maria Flansburg, Michael Dickey, D&L, DELLC, James Kelley, Ryan Lawrence, Clarence Martin, Ernst and Judith Raffaele, and Jorge Bustamante, Jr., respectively, avoiding all transfers of Excess Income Payments, as set forth in Exhibits B to H, together with interest and costs, and for such other and further relief as the Court may deem just and proper.

### COUNT III
### SECTION 726.106(1), FLA. STAT.:
### UNIFORM FRAUDULENT TRANSFER ACT
### (AGAINST DEFENDANTS JON DREW AND MARIA FLANSBURG, MICHAEL DICKEY, D&L INVESTMENT GROUP, LLC, DICKEY ENTERPRISES, LLC, JAMES KELLY, RYAN LAWRENCE, CLARENCE MARTIN, ERNST AND JUDITH RAFFAELE, AND JORGE BUSTAMANTE, JR. FOR THEIR EXCESS INCOME PAYMENTS)

93.     The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 84.

94.     This claim is asserted in the alternative to Counts I, II, and X.

95.     TBTI's claim arose before Paul Schumack caused TBTI to transfer the Excess Income Payments to Defendants Jon Drew and Maria Flansburg, Michael Dickey, D&L, DELLC, James Kelley, Ryan Lawrence, Clarence Martin, Ernst and Judith Raffaele, and Jorge Bustamante, Jr., respectively.

96.     TBTI did not receive a reasonably equivalent value in exchange for the transfer of the Excess Income Payments made to Defendants Jon Drew and Maria Flansburg, Michael Dickey, D&L, DELLC, James Kelley, Ryan Lawrence, Clarence Martin, Ernst and Judith Raffaele, and Jorge Bustamante, Jr., respectively.

97.     Paul Schumack was insolvent at the time of the transfers or became insolvent as a result of the transfers.

98.     The Receiver is entitled to void these transfers of Excess Income Payments from TBTI to Defendants Jon Drew and Maria Flansburg, Michael Dickey, D&L, DELLC, James Kelley, Ryan Lawrence, Clarence Martin, Ernst and Judith Raffaele, and Jorge Bustamante, Jr., respectively, as set forth in Exhibits B to H, pursuant to Section 726.106(1) FLA. STAT.

WHEREFORE, the Receiver asks this Court to enter judgment against Defendants Jon Drew and Maria Flansburg, Michael Dickey, D&L, DELLC, James Kelley, Ryan Lawrence, Clarence Martin, Ernst and Judith Raffaele, and Jorge Bustamante, Jr., respectively, avoiding all transfers of the Excess Income Payments from TBTI to Defendants Jon Drew and Maria Flansburg, Michael Dickey, D&L, DELLC, James Kelley, Ryan Lawrence, Clarence Martin, Ernst and Judith Raffaele, and Jorge Bustamante, Jr., respectively, as set forth in Exhibits B to H, together with interest and costs, and for such other and further relief as the Court may deem just and proper.

## COUNT IV
### SECTION 726.105(1)(a), FLA. STAT.:
### UNIFORM FRAUDULENT TRANSFER ACT
**(AGAINST DEFENDANTS JON FLANSBURG AND ANDREW WRIGHT FOR THE INCOME PAYMENTS)**

99.     The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 84.

100.     This claim is asserted in the alternative to Counts V, VI, and X.

101.     Paul Schumack, a debtor, caused TBTI to transfer Income Payments to Defendants Jon Flansburg and Andrew Wright, as set forth in Exhibits I and J, with actual intent to hinder, delay or defraud the Receiver, a creditor.

102.     The Receiver is entitled to avoid these fraudulent transfers of Income Payments from TBTI to Defendants Jon Flansburg and Andrew Wright, pursuant to Section 726.105(1)(a), FLA. STAT.

WHEREFORE, the Receiver asks this Court to enter judgment against Defendants Jon Flansburg and Andrew Wright avoiding all transfers of Income Payments made by TBTI to Defendants Jon Flansburg and Andrew Wright, respectively, directly or indirectly, as set forth in Exhibits I and J, together with interest and costs, and for such other and further relief as the Court may deem just and proper.

## COUNT V
### SECTION 726.105(1)(b), FLA. STAT.:
### UNIFORM FRAUDULENT TRANSFER ACT
**(AGAINST DEFENDANTS JON FLANSBURG AND ANDREW WRIGHT FOR THE EXCESS INCOME PAYMENTS)**

103.     The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 84.

104.     This claim is asserted in the alternative to Counts IV, VI, and X.

105.     TBTI did not receive a reasonably equivalent value in exchange for the transfer of Excess Income Payments made to Defendants Jon Flansburg and Andrew Wright, respectively.

106.     When these transfers were made, Paul Schumack was engaged in a business or transaction for which the remaining assets were unreasonably small in relation to the business or transaction.

107.     When the transfers of Excess Income Payments were made, Paul Schumack intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as the debt became due.

108.     The Receiver is entitled to avoid the Excess Income Payments made from TBTI to Defendants Jon Flansburg and Andrew Wright, as set forth in Exhibits I and J, pursuant to Section 726.105(1)(b), FLA. STAT.

WHEREFORE, the Receiver asks this Court to enter judgment against Defendants Jon Flansburg and Andrew Wright, respectively, avoiding the Excess Income Payments, measured as the amount of Income Payments made in excess of the amounts contributed to TBTI and JCS, as applicable, as set forth in Exhibits I and J, together with interest and costs, and for such other and further relief as the Court may deem just and proper.

## COUNT VI
### SECTION 726.106(1), FLA. STAT.:
### UNIFORM FRAUDULENT TRANSFER ACT
**(AGAINST DEFENDANTS JON FLANSBURG AND ANDREW WRIGHT FOR THEIR EXCESS INCOME PAYMENTS)**

109.     The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 84.

110.     This claim is asserted in the alternative to Counts IV, V, and X.

111.    TBTI's claim arose before Paul Schumack caused TBTI to transfer the Excess Income Payments to Defendants Jon Flansburg and Andrew Wright, respectively.

112.    TBTI did not receive a reasonably equivalent value in exchange for the transfer of the Excess Income Payments made to Defendants Jon Flansburg and Andrew Wright, as set forth in Exhibits I and J, respectively.

113.    Paul Schumack was insolvent at the time of the transfers or became insolvent as a result of the transfers.

114.    The Receiver is entitled to avoid the Excess Income Payments transferred from TBTI to Defendants Jon Flansburg and Andrew Wright, respectively, pursuant to Section 726.106(1) FLA. STAT.

WHEREFORE, the Receiver asks this Court to enter judgment against Defendants Jon Flansburg and Andrew Wright, respectively, avoiding all transfers of Excess Income Payments transferred from TBTI to Defendants Jon Flansburg and Andrew Wright, as set forth in Exhibits I and J, together with interest and costs, and for such other and further relief as the Court may deem just and proper.

## COUNT VII
### SECTION 726.105(1)(a), FLA. STAT.:
### UNIFORM FRAUDULENT TRANSFER ACT
### (AGAINST DEFENDANTS JON FLANSBURG AND ANDREW WRIGHT FOR THE COMMISSION PAYMENTS)

115.    The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 84.

116.    This claim is asserted in the alternative to Counts VIII, IX, and X.

117.    Paul Schumack, a debtor, caused TBTI to transfer Commission Payments to Defendants Jon Flansburg and Andrew Wright, as set forth in Exhibits L and M, with actual intent to hinder, delay or defraud the Receiver, a creditor.

118.    The Receiver is entitled to avoid these fraudulent transfers of Commission Payments from TBTI to Defendants Jon Flansburg and Andrew Wright, pursuant to Section 726.105(1)(a), FLA. STAT.

WHEREFORE, the Receiver asks this Court to enter judgment against Defendants Jon Flansburg and Andrew Wright avoiding all transfers of Commission Payments made by TBTI to Defendants Jon Flansburg and Andrew Wright, respectively, directly or indirectly, as set forth in Exhibits L and M, together with interest and costs, and for such other and further relief as the Court may deem just and proper.

## COUNT VIII
### SECTION 726.105(1)(b), FLA. STAT.:
### UNIFORM FRAUDULENT TRANSFER ACT
### (AGAINST DEFENDANTS JON FLANSBURG AND ANDREW WRIGHT FOR THE COMMISSION PAYMENTS)

119.    The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 84.

120.    This claim is asserted in the alternative to Counts VII, IX, and X.

121.    TBTI did not receive a reasonably equivalent value in exchange for the transfer of Commission Payments made to Defendants Jon Flansburg and Andrew Wright, as set forth in Exhibits L and M, respectively.

122.    When these transfers were made, Paul Schumack was engaged in a business or transaction for which the remaining assets were unreasonably small in relation to the business or transaction.

20

123.    When the transfers of Commission Payments were made, Paul Schumack intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as the debt became due.

124.    The Receiver is entitled to avoid the Commission Payments made from TBTI to Defendants Jon Flansburg and Andrew Wright, pursuant to Section 726.105(1)(b), FLA. STAT.

WHEREFORE, the Receiver asks this Court to enter judgment against Defendants Jon Flansburg and Andrew Wright, respectively, avoiding the Commission Payments, as applicable, as set forth in Exhibits L and M, together with interest and costs, and for such other and further relief as the Court may deem just and proper.

**COUNT IX**
**SECTION 726.106(1), FLA. STAT.:**
**UNIFORM FRAUDULENT TRANSFER ACT**
**(AGAINST DEFENDANTS JON FLANSBURG AND ANDREW WRIGHT FOR THEIR COMMISSION PAYMENTS)**

125.    The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 84.

126.    This claim is asserted in the alternative to Counts VII, VIII, and X.

127.    TBTI's claim arose before Paul Schumack caused TBTI to transfer the Commission Payments to Defendants Jon Flansburg and Andrew Wright, respectively.

128.    TBTI did not receive a reasonably equivalent value in exchange for the transfer of the Commission Payments made to Defendants Jon Flansburg and Andrew Wright, as set forth in Exhibits L and M, respectively.

129.    Paul Schumack was insolvent at the time of the transfers or became insolvent as a result of the transfers.

130.   The Receiver is entitled to avoid the Commission Payments transferred from TBTI to Defendants Jon Flansburg and Andrew Wright, respectively, pursuant to Section 726.106(1) FLA. STAT.

WHEREFORE, the Receiver asks this Court to enter judgment against Defendants Andrew Wright and Jon Flansburg, respectively, avoiding all transfers of Commission Payments transferred from TBTI to Defendants Andrew Wright and Jon Flansburg, as set forth in Exhibits L and M, together with interest and costs, and for such other and further relief as the Court may deem just and proper.

### COUNT X
#### UNJUST ENRICHMENT
(AGAINST DEFENDANTS JON DREW AND MARIA FLANSBURG, JON FLANSBURG, MICHAEL DICKEY, D&L INVESTMENT GROUP, LLC, DICKEY ENTERPRISES, LLC, JAMES KELLY, RYAN LAWRENCE, CLARENCE MARTIN, ERNST AND JUDITH RAFFAELE, JORGE BUSTAMANTE, JR., AND ANDREW WRIGHT)

131.   The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 51 and 80 through 84.

132.   This unjust enrichment claim is asserted in the alternative to Counts I through IX in the event the remaining claims pleaded provide an inadequate remedy at law.

133.   Defendants Jon Drew and Maria Flansburg, Jon Flansburg, Michael Dickey, D&L, DELLC, James Kelley, Ryan Lawrence, Clarence Martin, Ernst and Judith Raffaele, Jorge Bustamante, Jr., and Andrew Wright, respectively, received benefits from TBTI.

134.   Defendants Jon Drew and Maria Flansburg, Jon Flansburg, Michael Dickey, D&L, DELLC, James Kelley, Ryan Lawrence, Clarence Martin, Ernst and Judith Raffaele, Jorge Bustamante, Jr., and Andrew Wright, respectively, knowingly and voluntarily accepted and retained these benefits.

135.     The circumstances alleged in this compliant render the retention of those respective benefits by Defendants Jon Drew and Maria Flansburg, Jon Flansburg, Michael Dickey, D&L, DELLC, James Kelley, Ryan Lawrence, Clarence Martin, Ernst and Judith Raffaele, Jorge Bustamante, Jr., and Andrew Wright inequitable and unjust, including to the investors of TBTI and the Receivership as a whole, so Defendants Jon Drew and Maria Flansburg, Jon Flansburg, Michael Dickey, D&L, DELLC, James Kelley, Ryan Lawrence, Clarence Martin, Ernst and Judith Raffaele, Jorge Bustamante, Jr., and Andrew Wright must pay the Receiver, acting on behalf of JCS, the value of the benefits respectively received.

136.     Defendants Jon Drew and Maria Flansburg, Jon Flansburg, Michael Dickey, D&L, DELLC, James Kelley, Ryan Lawrence, Clarence Martin, Ernst and Judith Raffaele, Jorge Bustamante, Jr., and Andrew Wright, respectively, have been unjustly enriched at the expense of TBTI (and, ultimately, its investors) in the amount of the transfers to Defendants Jon Drew and Maria Flansburg, Jon Flansburg, Michael Dickey, D&L, DELLC, James Kelley, Ryan Lawrence, Clarence Martin, Ernst and Judith Raffaele, Jorge Bustamante, Jr., and Andrew Wright in excess of their respective, principal investments, and TBTI, through the Receiver, is entitled to judgment in that amount.

137.     The Receiver, on behalf of TBTI, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, the Receiver asks this Court to enter judgment against Defendants Jon Drew and Maria Flansburg, Jon Flansburg, Michael Dickey, D&L, DELLC, James Kelley, Ryan Lawrence, Clarence Martin, Ernst and Judith Raffaele, Jorge Bustamante, Jr., and Andrew Wright for the value of the benefits conferred on them, respectively, together with interest and costs, and for such other and further relief as the Court may deem just and proper.

## COUNT XI
### SECTION 726.105(1)(a), FLA. STAT.:
### UNIFORM FRAUDULENT TRANSFER ACT
### (AGAINST DEFENDANT DICKEY)

138.    The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 84.

139.    This claim is asserted in the alternative to Counts XII, XIII, and XIV.

140.    Joseph Signore, a debtor, caused JCS to transfer Excess Income Payments to Defendant Brian Dickey, directly or indirectly, with actual intent to hinder, delay or defraud the Receiver, a creditor.

141.    The Receiver is entitled to avoid the Excess Income Payments transferred from JCS to Defendant Brian Dickey, as set forth in Exhibit K, pursuant to Section 726.105(1)(a), FLA. STAT.

WHEREFORE, the Receiver asks this Court to enter judgment against Defendant Brian Dickey, for the Excess Income Payments, as set forth in Exhibit K, together with interest and costs, and for such other and further relief as the Court may deem just and proper.

## COUNT XII
### SECTION 726.105(1)(b), FLA. STAT.:
### UNIFORM FRAUDULENT TRANSFER ACT
### (AGAINST DEFENDANT BRIAN DICKEY)

142.    The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 84.

143.    This claim is asserted in the alternative to Counts XI, XIII, and XIV.

144.    JCS did not receive a reasonably equivalent value in exchange for the transfer of Excess Income Payments to Defendant Brian Dickey.

145.    When these transfers were made, Joseph Signore was engaged in a business or transaction for which the remaining assets were unreasonably small in relation to the business or transaction.

146.    When these transfers were made, Joseph Signore intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as the debt became due.

147.    The Receiver is entitled to avoid the Excess Income Payments transferred from JCS to Defendant Brian Dickey, as set forth in Exhibit K, pursuant to Section 726.105(1)(b), FLA. STAT.

WHEREFORE, the Receiver asks this Court to enter judgment against Defendant Brian Dickey, avoiding all Excess Income Payments transferred from JCS to Defendant Brian Dickey, as set forth in Exhibit K, together with interest and costs, and for such other and further relief as the Court may deem just and proper.

### COUNT XIII
### SECTION 726.106(1), FLA. STAT.:
### UNIFORM FRAUDULENT TRANSFER ACT
### (AGAINST DEFENDANT BRIAN DICKEY)

148.    The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 84.

149.    This claim is asserted in the alternative to Counts XI, XII, and XIV.

150.    JCS's claims arose before Joseph Signore caused JCS to transfer the Excess Income Payments to Defendant Brian Dickey.

151.    JCS did not receive a reasonably equivalent value in exchange for the Excess Income Payments transferred to Defendant Brian Dickey.

152.    Joseph Signore was insolvent at the time of the transfers or became insolvent as a result of the transfers.

153.    The Receiver is entitled to void the Excess Income Payments transferred from JCS to Defendant Brian Dickey, as set forth in Exhibit K, pursuant to Section 726.106(1) FLA. STAT.

WHEREFORE, the Receiver asks this Court to enter judgment against Defendant Brian Dickey, avoiding all Excess Income Payments transferred from JCS to Defendant Brian Dickey, as set forth in Exhibit K, together with interest and costs, and for such other and further relief as the Court may deem just and proper.

**COUNT XIV**
**UNJUST ENRICHMENT**
**(AGAINST DEFENDANT BRIAN DICKEY)**

154.    The Receiver re-alleges each and every allegation contained in Paragraphs 1 through 51 and 80 through 84.

155.    This unjust enrichment claim is asserted in the alternative to Counts XI, XII, and XIII, in the event the remaining claims pleaded provide an inadequate remedy at law.

156.    Defendant Brian Dickey received benefits from JCS.

157.    Defendant Brian Dickey knowingly and voluntarily accepted and retained these benefits.

158.    The circumstances alleged in this compliant render Brian Dickey's retention of those respective benefits inequitable and unjust, including to the investors of JCS and the Receivership as a whole, so Defendant Brian Dickey must pay the Receiver, acting on behalf of JCS, the value of the benefit received.

159.    Defendant Brian Dickey has been unjustly enriched at the expense of JCS (and, ultimately, its investors) in the amount of the transfers to Defendant Brian Dickey in excess of their respective, principal investments, and JCS, through the Receiver, is entitled to judgment in that amount.

160.    The Receiver, on behalf of JCS, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, the Receiver asks this Court to enter judgment against Defendant Brian Dickey for the value of the benefits conferred on Defendant Brian Dickey, together with interest and costs, and for such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**SALLAH ASTARITA & COX, LLC**
*Counsel for James D. Sallah, Esq., not individually, but solely in his capacity as Receiver*
One Boca Place
2255 Glades Road, Ste. 300E
Boca Raton, FL 33431
Tel.: (561) 989-9080
Fax: (561) 989-9020

/s/Joshua A. Katz, Esq.
**Jeffrey L. Cox, Esq.**
Fla. Bar No. 0173479
Email: jlc@sallahlaw.com
**Joshua A. Katz, Esq.**
Fla. Bar No. 0848301
Email: jak@sallahlaw.com